UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JERRY DOWELL BAILEY, JR.,

                 Plaintiff,                Case No. 1:17-cv-26

v.                                  Honorable Robert J. Jonker

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                 Defendants.
_____/

## OPINION

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff will pay the initial partial filing fee when funds are available.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, Plaintiff's action will be dismissed on immunity grounds and for failure to state a claim.

## Factual Allegations

Plaintiff presently is incarcerated at the Baraga Maximum Correctional Facility (AMF).  In his *pro se* complaint, Plaintiff sues the Michigan Department of Corrections (MDOC); Director Heidi Washington; Blue Cross Blue Shield; Corizon Health Services; the MDOC Hearings Division; Hearing Officers Thomas O. Mohrman and Unknown O'Brien; and unknown parties. [1]

Plaintiff's complaint concerns the restitution that he was ordered to pay as a sanction for two separate Class I misconduct findings of guilt.  The first incident occurred on November 2, 2013, while Plaintiff was incarcerated at the Carson City Correctional Facility in Carson City, Michigan.  Plaintiff was involved in a fight involving at least two other inmates.  He received "several lumps around his facial area." (Compl., ECF No. 1, PageID.4.)  The health services nurse thought Plaintiff's jaw was broken.  Despite Plaintiff's assurance that he was fine and against Plaintiff's wishes, he was taken to Carson City Hospital and given an examination, IV drugs, and multiple CT scans. (*Id.*; hospital bill, ECF No. 1-1, PageID.26.)  The scan confirmed Plaintiff's jaw was not broken and he was sent back to the facility.

Plaintiff was charged with a Class I misconduct violation for fighting.  Plaintiff was provided notice that there would be a hearing on the misconduct report.  Defendant Hearing Officer Thomas O. Mohrman conducted the hearing on November 7, 2013.  The misconduct report was read to Plaintiff.  He pleaded not guilty.  The other two prisoners pleaded guilty.  Defendant Mohrman heard testimony from Plaintiff and MDOC personnel.  Defendant Mohrman reviewed videos of the incident.  Defendant Mohrman found Plaintiff guilty and imposed the following sanctions: 14 days

---

[1]Although Plaintiff was unable to identify the unknown parties by name, he identified them by position: regional doctor and regional nurse.  (Compl., ECF No. 1, PageID.3.)

of detention, 21 days loss of privileges, and restitution in the amount of $1,778.53, one-third of Plaintiff's medical expenses.  (Class I Misconduct Hr'g Report, ECF No. 1-1, PageID.28.)

The second incident occurred on September 11, 2016, while Plaintiff was incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan.  Plaintiff hit another prisoner in the face with a broken broom handle.  Defendant Hearing Officer Unknown O'Brien conducted a hearing on September 19, 2016.  Plaintiff pleaded not guilty.  Defendant O'Brien's report indicates that the misconduct report and the investigation report were read to Plaintiff.  Defendant O'Brien watched the video and listened to Plaintiff's side of the story, but found Plaintiff guilty on both charges. Defendant O'Brien imposed sanctions of 20 days detention, 30 days loss of privileges, and $2,399.00 in restitution for the hospital charges incurred in treating the other prisoner.  (Class I Misconduct Hr'g Report, ECF No. 1-1, PageID.29-30.)

Plaintiff alleges that the two restitution orders are recorded as a debt on his trust account.  He is never permitted to accumulate more than $11.00 in his account.  Any excess is taken from him in payment of his restitution debt.  As a result he is denied the ability to enjoy the fruits of his prison labor by purchasing items to improve the quality of his life.

Although Plaintiff acknowledges he was provided notice of the misconduct hearings, he contends that he was never provided notice that the MDOC would seek restitution from him. Moreover, Plaintiff argues that the MDOC is not actually out any money because the expenses of care are covered by Blue Cross Blue Shield or Corizon Health Services.  Plaintiff's central contention, however, is that he has been deprived of his property without due process of law in violation of the Fourteenth Amendment.  He purports to bring these claims on his behalf and on

behalf of the class of prisoners who are similarly situated.  He seeks monetary damages as well as declaratory and injunctive relief.

## Discussion

I. Class certification

Plaintiff has entitled his complaint as a class action, which the Court construes as a request for class certification.  For a case to proceed as a class action, the court must be satisfied on a number of grounds, including the adequacy of class representation.  *See* FED. R. CIV. P. 23(a)(4). It is well established that *pro se* litigants are inappropriate representatives of the interests of others. *See Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *see also Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001); *Howard v. Dougan*, No. 99-2232, 2000 WL 876770, at *1 (6th Cir. June 23, 2000).  Because Plaintiff is an incarcerated *pro se* litigant, the Court finds that he is not an appropriate representative of a class.  Therefore, the Court will deny Plaintiff's request for class certification.

II. Immunity

**A.    Judicial Immunity**

Plaintiff sues Hearing Officers Mohrman and O'Brien[2] for ordering him to pay restitution.  Defendants are hearing officers whose duties are set forth at MICH. COMP. LAWS

---

[2]At one point in Plaintiff's complaint, he indicates he is suing Defendants Mohrman and O'Brien in their official capacities.  (Compl., ECF No. 1, PageID.3.)  However, speaking generally with respect to the Defendants as a group, he indicates they are sued in their official and individual capacities. (*Id.*)  Construed liberally, Plaintiff's complaint seeks to impose liability on the individual defendants in both capacities.

§ 791.251 through § 791.255.   Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* MICH. COMP. LAWS § 791.251(e)(6).  Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed.  *See* MICH. COMP. LAWS § 791.252(k).  There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts, *see* MICH. COMP. LAWS § 791.255(2).  Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges.  *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988).  As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers.  *Id.*; *see also Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights).  Because Defendant Mohrman and O'Brien are entitled to immunity, Plaintiff may not maintain an action against them for monetary damages.[3]

### B.      Sovereign immunity

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections or its Hearings Division.  Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v.*

---

[3]Plaintiff's claims against the hearing officers (and other Defendants) for injunctive and declaratory relief are considered below.

*Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections and its Hearings Division) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections and its Hearings Division.

### C.    Official capacity suits for damages

Plaintiff has also sued Heidi Washington, Director of the Michigan Department of Corrections, and Hearing Officers Mohrman and O'Brien in their official capacities. A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the Michigan Department of Corrections. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592-93 (6th

Cir. 1989).[4]  Therefore, the Court also dismisses the suit for monetary relief against Defendants Washington, Mohrman, and O'Brien in their official capacities.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

---

[4]Nevertheless, an official-capacity action seeking injunctive relief constitutes an exception to sovereign immunity.  *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908) (Eleventh Amendment immunity does not bar injunctive relief against a state official).

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Injunctive relief against a judicial officer

Injunctive relief is not available under § 1983 against Defendants Mohrman and O'Brien, because, under the 1996 amendments to that statute, injunctive relief "shall not be granted" in an action against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *accord Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012). Plaintiff does not allege that a declaratory decree was violated or that declaratory relief was unavailable. Consequently, his claim for injunctive relief against the hearing officer defendants is barred. *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).[5]

---

[5]The only claim remaining against Defendants Mohrman and O'Brien is Plaintiff's claim for prospective declaratory relief. In *Ward v. City of Norwalk*, 640 F. App'x 462 (6th Cir. 2016), the Court concluded that the very language in § 1983 that bars injunctive relief "implicitly recognizes that declaratory relief is available against judicial officers." *Id.* at 467.

## B.   Supervisory Liability

Plaintiff makes no specific allegation against MDOC Director Washington.   To the extent that Plaintiff seeks to impose liability on Defendant Washington for the actions of her subordinate MDOC staff, however, he has failed to state a claim against her.   Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendant Washington engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against her.

## C.   Corizon and Blue Cross

Plaintiff also names as Defendants Corizon Health Services and Blue Cross Blue Shield. The basis for the liability of these Defendants is not entirely clear.  Neither Corizon nor Blue Cross took property from Plaintiff.  Plaintiff names them on the theory, apparently, that the MDOC unconstitutionally took Plaintiff's money and may have then transferred the money to one of these

entities.   As stated above, a claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899.  Plaintiff has alleged no active unconstitutional behavior by these Defendants.

Construed liberally, Plaintiff might be alleging that these entities acted in concert with the hearing officers in taking Plaintiff's money without due process. *See Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004).  Plaintiff's allegations of concerted action or conspiracy are sketchy, at best. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987);  *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996).  A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988).  "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996).

Plaintiff's allegations of conspiracy are wholly conclusory and speculative.  None of the allegations establish a link or agreement between the actions of the alleged conspirators.  In the words of the Supreme Court, Plaintiff's allegations of parallel conduct, while hinting at a

"possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556; *see also Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008) ("[A] conclusory allegation that the defendants acted in concert . . . without more, fail[s] to allege a sufficient factual basis to establish any sort of 'meeting of the minds' or to link any of the alleged conspirators in a conspiracy to deprive [plaintiff] of his civil rights."). Therefore, Plaintiff fails to state a plausible conspiracy claim against Defendants Corizon and Blue Cross.

### D.    Due Process Clause

Plaintiff argues that the orders to pay restitution violated his due process rights. Plaintiff alleges that he did not receive notice prior to a fact-finding hearing for removal of his funds in accordance with MDOC Policy Directive 04.02.105.  He also claims that he should not have to pay the medical bills for himself for the 2013 misconduct or his victim for the 2016 misconduct when the charges were covered by medical insurance.  Plaintiff, however, does not challenge the underlying major misconduct convictions.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of those interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  The Sixth Circuit has held that Plaintiff has a protected property interest in his inmate trust fund account.  *See Hampton v. Hobbs*, 106 F.3d 1281, 1287 (6th Cir. 1997).  Consequently, Plaintiff may not be deprived of his prison trust account funds without due process of law.  *See Wolff v. McDonnell*, 418 U.S. 539, 566 (1974).  The due process of law gives the person notice and an opportunity to be heard

- 11 -

before he is deprived of any significant property interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citing *Mullane v. Cent. Hanover Bank & Trust*, 444 U.S. 277, 284 n.9 (1980)); *see also Wolff*, 418 U.S. at 563-68 (minimal due process protections required before a prisoner may be deprived of a *liberty* interest are notice, written statement of reasons for the action, and an opportunity to be heard).

First, Plaintiff does not deny that he received notice of the misconduct charges against him. He even submits the misconduct report with regard to the 2016 incident. (Misconduct Report, ECF No. 1-1, PageID.27.) Moreover, both hearing reports disclose that the misconduct reports were read to and discussed with Plaintiff. (Hr'g Reports, ECF No. 1-1, PageID.28-30.) The misconduct reports describe the misconduct violation in detail. The potential sanction of restitution is disclosed in the MDOC policy directive regarding prisoner discipline. MDOC Policy Directive 03.03.105 (effective April 9, 2010), Attachment D Disciplinary Sanctions, clearly states that restitution is one of four sanctions the hearing officer may impose upon a finding of guilt for a Class I Misconduct.

Plaintiff, however, argues that he should have received notice before a hold was placed on his prisoner account, presumably according to MDOC Policy Directive 04.02.105, ¶¶T, U (effective Jan. 1, 2010). That directive governs the removal of money from prisoner trust accounts. Plaintiff is mistaken. The policy directive provides:

Removal of Funds from Prisoner Trust Accounts

T.   A fact-finding hearing shall be conducted pursuant to Administrative Rule 791.3310 by a facility hearing officer before funds are removed from a prisoner's trust account, *except* when due to one or more of the following:

* * *

- 12 -

3.      *An order to pay restitution issued by a hearing officer for a major or minor misconduct.*

MDOC Policy Directive 04.02.105, ¶T (emphasis added).  The directive, clearly does not apply to Plaintiff's situation because he was ordered to pay restitution by hearing officers for his major misconduct convictions.  *See* Attach. D to MDOC Policy Directive 03.03.105D (effective Apr. 9, 2012) (permitting hearing officers to order restitution for a Class I Misconduct).  Thus, the notice Plaintiff received in the Misconduct Reports was sufficient to inform him that restitution might be ordered and that the order would be given effect by removal of funds from his account without further hearing.

Moreover, Plaintiff received an opportunity to be heard and detailed reasons for the findings of guilt for the misconduct charges.  Plaintiff's major misconduct hearing regarding the incident at Carson City in 2013 was held on November 7, 2013.  Plaintiff spoke at the hearing and heard the evidence against him.  Furthermore, the Major Misconduct Hearing Report described the evidence and reasons for Hearing Officer Mohrman's findings, as follows:

**Reasons for Findings**:

This was a mutual physical confrontation.  The three prisoners were all interviewed.  The other two involved plead guilty to being in a fight with Bailey.  The officer also saw the exchange.  This prisoner lacks credibility when he said nothing occurred.  He was seen by the officer exchanging blows with two other prisoners.  He told the investigator this was a continuation of something earlier.  At hearing he said nothing occurred only that he "fell out" while outside.  This prisoner was swinging at two other prisoners.  This was a fight.  What the cause was is not known as none would respond to the issue.  Even so, this prisoner was involved in the incident and is assessed 1/3 of the medical expenses which were incurred from the incident.  He is to reimburse the facility $1778.53.

- 13 -

(Hr'g Report, ECF No. 1-1, PageID.28.)  As Plaintiff had an opportunity to be heard and received

a written statement of the reasons for the misconduct conviction and restitution order, the remaining

due process protections were satisfied.

        The major misconduct hearing regarding the incident at the St. Louis Correctional

Facility in 2016 was held on September 19, 2016.  Plaintiff again spoke at the hearing and heard the

evidence against him.[6]  Hearing Officer O'Brien provided detailed reasons for the findings of guilt

and for the sanctions imposed, including restitution in the amount of $2,339.00.  (Hr'g Report, ECF

No. 1-1, PageID.29-30).  Thus, once again, Plaintiff received the minimal procedural safeguards to

which he was entitled prior to the order to pay restitution.  Therefore, Plaintiff fails to state a due

process claim against any defendant, in any capacity, for any possible relief.

### Conclusion

        Having conducted the review required by the Prison Litigation Reform Act, the Court

determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

        The Court must next decide whether an appeal of this action would be in good faith

within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no

good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the

$505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

---

     [6]Plaintiff was not permitted to see the medical bills for this incident because they were for expenses incurred in treating the other prisoner.  Plaintiff, however, does not have a right to access the other prisoner's medical information. Although inmates are generally entitled to the evidence against them, the Supreme Court has long recognized that "there will be occasions when personal or institutional safety is so implicated that the statement may properly exclude certain items of evidence."  *Wolff*, 418 U.S. at 565.  Obviously, personal medical information implicates the safety of the other prisoner.

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

       This is a dismissal as described by 28 U.S.C. § 1915(g).

       A Judgment consistent with this Opinion will be entered.


Dated:   <u>    January 26, 2017    </u>          <u>/s/ Robert J. Jonker                    </u>
                                           ROBERT J. JONKER
                                         CHIEF UNITED STATES DISTRICT JUDGE